THE STATE *ex rel.* WALKER, *Attorney General,*
v. REBENACK.

### In Banc, July 15, 1896.

School Director: ELIGIBILITY: FRAUDULENT PAYMENT OF TAX. The
fraudulent payment by a candidate for school director in the city of
St. Louis of a tax for which he was not liable, for the purpose of
qualifying himself to hold the office, does not render him eligible.

### *Quo Warranto.*

WRIT OF OUSTER AWARDED.

*R. F. Walker,* attorney general, for relator.

*August Rebenack* for respondent.

(1) The merchants' license tax authorized by
Revised Statutes, section 6899, is a personal property
tax and merchant licenses are taxable for school pur-
poses, and the school board of the city of St. Louis has
power to levy a tax upon them. *State ex rel. v. Tracy,*
94 Mo. 217; *State ex rel. v. Kinney,* 48 Mo. 374. (2)
A license fee is a tax. *St. Louis v. Spiegel,* 90 Mo. 587.
(3) Indirect taxes may be said to embrace taxes upon
imports, excise taxes, and license and occupation taxes.
*Veazie Bank v. Fenno,* 8 Wall. (U. S.) 533; *Scholey v.
Rew,* 23 Wall. (U. S.) 331. (4) A tax upon carriages
by number is an indirect tax. *Hylton v. U. S.,* 3 Dall.
(U. S.) 171. (5) So is a tax upon receipts, or a suc-
cession tax, or an income tax. *Springer v. U. S.,* 102
U. S. 602. (6) "While the payment of a city tax is
a condition prerequisite, which must be complied
with before any party can hold the position of
director in this board, the time of payment is imma-

terial, provided such payment precedes the actual qualifying by the party elect as a director, and that the payment of such a tax at any time, however remote from or proximate to such time of qualifying, satisfies the condition.  *  *  *'' Atty's Opinion, 2 Off. Proc. 366, 381.  See, also, opinions of several attorneys, 2 Off. Proc. 386, 387.

·GANTT, J.—This is a proceeding by *quo warranto*, by the attorney general in his official character, to oust the respondent from the office of school director in the board of president and directors of the St. Louis public schools, into which it is alleged he has intruded himself without authority of law.

The respondent, in his return, claims title to said office by virtue of an election held on the third day of March, 1896, in the third school district of the city of St. Louis, under and by virtue of the orders of said board of president and directors of St. Louis public schools, at which said election he received the highest number of votes cast for director in said district.  He further avers that at the time he was elected he was possessed of and now possesses all the qualifications required under and by virtue of the laws governing said school board to constitute him eligible to said office of director therein, that is to say, among other qualifications, respondent was at said time a free (white) male citizen over the age of twenty-one years and had for more than two consecutive years previously resided in said third district in the city of St. Louis; was a citizen of the United States, had paid a city tax, and ''had paid a school tax therein for two consecutive years immediately preceding his election as such director,'' and was under no disability imposed by law.  Denied that he had usurped said office.

The attorney general replied to this return and

traversed all the material averments thereof; and specifically "denied that respondent had for two consecutive years immediately preceding his election paid a school tax in the city of St. Louis." On the hearing in this court, respondent offered in evidence the official returns of the election held for director in the third school district, March 3, 1896, from which it appears that respondent received at said election eight hundred and sixty-three votes; Dr. Felix Spinzig, four hundred and sixteen, and George Blumenberg, one hundred and three, giving respondent a clear majority over both of his opponents of three hundred and forty-four votes.

Respondent then offered the following documents to prove that he had paid school taxes in said city of St. Louis for two consecutive years immediately preceding his election as such director:

"MERCHANTS' STATE LICENSE.

"STATE OF MISSOURI.

"CITY COLLECTOR'S OFFICE,
Mar. 2, 1896.
ST. LOUIS, MO.

"*To all who shall see these presents—greeting:*

"KNOW YE, That Cuff & Rebenack having on the 2d day of March, in the year of our Lord, eighteen hundred and ninety-four, paid Henry Ziegenhein, collector, within and for the city of St. Louis, the sum of one $\frac{15}{100}$ dollars, being the annual state tax imposed on them as venders of merchandise,

"THEREFORE, the said Cuff & Rebenack is hereby authorized to vend merchandise at any one place within said city for the term ending on the first day of July, 1895.

State Tax . . . . $ 15
State Int. Tax. . 10
School Tax. . . . 40
Fee. . . . . . . . 50
———
$1 15

IN TESTIMONY WHEREOF, I, H. J. Pocock, have hereunto set my hand and affixed the seal of said city, this 2d day of March, 1896.

"H. J. POCOCK, Register.
"Countersigned:
"ISAAC H. STURGEON, Comptroller.
"Granted this 2d day of March, 1896.
"HEY. ZIEGENHEIN, Collector.
"Per H. GUENTHER, Deputy."

"No. 4896.

"Endorsed:
"This license was paid on the 2d day of March, 1896, by Hermann H. Rebenack personally.          HENRY ZIEGENHEIN,
"Collector of the Revenue.
"DRAMAND, Clerk."

"Bring this license when you call to renew."

"This license is not transferable."

State ex rel. v. Rebenack.

## "MERCHANTS' STATE LICENSE.

### "STATE OF MISSOURI.

"CITY COLLECTOR'S OFFICE,
Feb. 27, 1896.
ST. LOUIS, MO.

"*To all who shall see these presents—greeting:*

"KNOW YE, That Cuff & Rebenack having on the twenty-seventh day of February, in the year of our Lord, eighteen hundred and ninety-five, paid Henry Ziegenhein, collector, within and for the city of St. Louis, the sum of two $^{45}/_{100}$ dollars, being the annual state tax imposed on them as venders of merchandise.

"THEREFORE, the said Cuff & Rebenack is hereby authorized to vend merchandise at any one place within said city for term ending on the first day of July, 1896.

State Tax. . . $   15
State Int. Tax.   30
School Tax. .  1 20
Fee. . . . . .   50
                 ————
              $2 45

IN TESTIMONY WHEREOF, I, H. J. Pocock, Register of the city of St. Louis, have hereunto set my hand and affixed the seal of the said city, this 27 day of Feb., 1895.
"H. J. POCOCK, Register.

"Countersigned:
"ISAAC H. STURGEON, Comptroller.
"Granted this 2d day of Feb., 1895.
"HEY. ZIEGENHEIN, Collector.
"Per ARNOLD, Deputy."
"No. 4440.

"Endorsed:
"This license was paid on the 27th day of February, 1896, by Hermann H. Rebenack, personally.           HENRY ZIEGENHEIN,
"Collector of the Revenue.
"DRAMAND, Clerk."

"Bring this license when you call to renew."

"This license is not transferable."

State ex rel. v. Rebenack.

## "MERCHANTS' CITY LICENSE.

"CITY OF ST. LOUIS.

"1895.                1896.

"CITY COLLECTOR'S OFFICE,
Feb. 27, 1896.
ST. LOUIS, MO.

"*To all who shall see these presents—greeting:*

"KNOW YE, That Cuff & Rebenack, having paid to Henry Ziegenhein, collector of the city of St. Louis, the sum of five $^{60}/_{100}$ dollars, being the tax and license upon them as a merchant.

"THEREFORE, The said Cuff & Rebenack is hereby authorized to sell any goods, wares, and merchandise of any description, except as otherwise provided by ordinance, at any one store, stand, or place of business within the city, or at the Merchants' Exchange, for the year ending on the first Monday of July, 1896.

Tax. . . . $ 60
License. . 5 00
————
Total. . $5 60

IN TESTIMONY WHEREOF, I, Isaac H. Sturgeon, comptroller of the city of St. Louis, have hereunto set my hand, this 27 day of Feb., 1895.

"ISAAC H. STURGEON, Comptroller.

"ATTEST:

"H. J. POCOCK, Register.

"Delivered this 27 day of Feb., 1895.

"HEY. ZIEGENHEIN, Collector.

"Per ARNOLD, Deputy."

"Endorsed:

"This license was paid on the 27th of February, 1896, by Hermann H. Rebenack, personally.          HENRY ZIEGENHEIN,

"Collector of the Revenue.

"DRAMAND, Clerk."

"Bring this license when you call to renew."

"This license is not transferable."

"MERCHANTS' CITY LICENSE.

"CITY OF ST. LOUIS.

"1894.                    1895.

"CITY COLLECTOR'S OFFICE,  ⎱
         Mar. 22, 1896.            ⎰
         ST. LOUIS, MO.

"*To all who shall see these presents—greeting:*

"KNOW YE, That Cuff & Rebenack, having paid to Henry Ziegenhein, collector of the city of St. Louis, the sum of five $^2/_{100}$ dollars, being the tax and license upon them as a merchant.

"THEREFORE, The said Cuff & Rebenack is hereby authorized to sell any goods, wares, and merchandise of any description, except as otherwise provided by ordinance, at any one store, stand, or place of business within the city, or at the Merchants' Exchange, for the year ending on the first Monday in July, 1895.

Tax. . . . $ 20
License. . 5 00
————
Total. . $5 20

IN TESTIMONY WHEREOF, I, Isaac H. Sturgeon, comptroller of the city of St. Louis, have hereunto set my hand, this 22d day of March, 1895.

"ISAAC H. STURGEON, Comptroller.

"ATTEST:

"H. J. POCOCK, Register.

"Delivered this 2d day of March, 1895.
         "HEY. ZIEGENHEIN, Collector.
         "Per A. GUENTHER, Deputy."
               "No. 4856.

"Endorsed:

"This license was paid on the 2d of March, 1896, by Hermann H. Rebenack, personally.

"HENRY ZIEGENHEIN,
         "Collector of the Revenue.
"DRAMAND, Clerk."

"Bring this license when you call to renew."

"This license is not transferable."

The respondent testified in his own behalf that *in June, 1895*, he formed a partnership with one Frederick Cuff in the manufacture and sale of disinfectants; that he had paid the above taxes and license fees in person.

Cuff also testified that the partnership between himself and Rebenack was formed in the latter part of June, 1895, or beginning of July, 1895. That they did business under the name and style of "*West Disinfectant Company.*" This company furnished the school board large *quantities of disinfectants*.

I. The sole question for determination is whether respondent is ineligible for the position of director in said board by reason of his failure to pay school taxes in said city for two consecutive years immediately preceding his said election on March 3, 1896, as required by the laws governing said school board. Section 7, p. 2172, 2 R. S. 1889; Laws 1887, sec. 5, p. 273.

It will be observed that exhibit 3 above set out is a state merchants' license, and authorizes "Cuff & Rebenack" to vend merchandise at any one place in the city of St. Louis for a term ending July 1, 1895. It recites that this *firm which was not formed' until the latter part of June, 1895*, had on *March 2, 1894*, paid Henry Ziegenhein $1.15 as the annual tax levied upon them as venders of merchandise, of which sum forty cents was a school tax.

But Pocock, the register, and Mr. Sturgeon, the comptroller, certify upon this same paper that this license upon which this tax was paid, *was not granted until March 2, 1896, the day before the election was held*.

A more transparent scheme to evade the law requiring the payment of a school tax by a school director for two years immediately preceding his election can hardly be conceived. It not only contradicts itself but is directly impeached by the respondent's

own evidence. It recites the existence of a firm and the obtaining of a license by said firm on March 2, 1894, which both partners swear *was not formed until the latter part of June or first of July, 1895.*

It pretends to authorize them to vend merchandise up to July 1, 1895, when in truth and in fact it was not issued until March 2, 1896, the day prior to the holding of the election on March 3, 1896. Said firm had no right to deal as merchants without having *first* obtained said license. Sec. 6895, R. S. 1889.

As Rebenack was not a copartner of Cuff's until the latter part of June, 1895, and was in no manner liable for a merchant's license tax *prior* to the formation of the said firm, it is painfully evident that it was a bungling, fraudulent scheme to qualify him for the office of school director by issuing a tax receipt *for a year in which he had no assessable property and upon a business in which he was not engaged.* It is very plain that this paper is no evidence of the payment of a school tax by Rebenack for the year 1895, not even the *twenty cents* which he claims to have paid.

Exhibit 4 is also another bald and palpable subterfuge to qualify respondent. It also is a merchants' license granted February 27, 1895, by Pocock, the register, and countersigned by Isaac Sturgeon, comptroller. It recites that Cuff & Rebenack on twenty-seventh of February, 1895, paid Ziegenhein, collector, $2.45 annual state tax imposed on them as vendors of merchandise and authorized them to vend merchandise until July 1, 1896. Upon the paper itself the collector certifies this tax was in fact not paid *until February 27, 1896,* four days before the election, but the fact remains that whenever paid, it was an attempt to impose on the board evidence that Rebenack had been, during *all the time from February, 27 1895, to February 27, 1896,* a member of the firm of Cuff & Rebenack,

whereas he was not a member of that firm until July 1, 1895, and had no license as a merchant for the time it purports to cover. The other two exhibits, 5 and 6, are merely city licenses and no school tax is paid thereon. So that it is perfectly apparent that there is no evidence before us that respondent was the owner of any property upon which he was liable for a school tax prior to July 1, 1895; that between that date and March 3, 1896, it was neither possible nor lawful to collect from him school taxes for two consecutive years. At most, there could have been collected of and from him and his firm of Cuff & Rebenack, the proportional tax from July 1, 1895, to June 1, 1896.

This very clearly appears from section 6921, Revised Statutes, 1889, which provides that "When any person shall commence the business of merchandising in any county in this state after the first Monday in June, in any year, he shall execute a bond as provided for in section 6897, conditioned that he will, on the first day of November next succeeding, furnish to the collector of his county a statement, verified as herein required, of the largest amount of goods, wares, or merchandise which he had on hand or subject to his control, whether owned by himself or consigned to him for sale, on the first day of any month between the time when he commenced business as a merchant and the said first day of November next succeeding; upon which statement he shall pay the same rate of tax as other merchants, to be estimated as the time from the day on which he commenced business to the first Monday of June next succeeding shall be to one year."

The city ordinances of St. Louis conform to this statutory regulation also as to city licenses. Ordinances St. Louis, 1887, Merchants, secs. 1470 to 1480, inclusive.

The city of St. Louis having adopted the scheme and charter from that time forth bore the same relation to the state as any county thereof, in the collection of revenue and performing the other functions which had prior to that time devolved upon the county in its relation to the state and this section applies to the city of St. Louis as much as to any county in the state. Art. 9, sec. 23, Const. of Mo. 1875; *State ex rel. v. Tracy*, 94 Mo. 217.

As Cuff & Rebenack commenced business as a firm about the first of July, 1895, their tax rate was necessarily estimated in the proportion that the time from July 1, 1895, to June 1, 1896, bore to one year. It is evident that this part of a year covered the whole period for which that firm was assessable and instead of *two consecutive years*, it was only a fraction of one year. It requires no argument to demonstrate that Rebenack was in no manner liable for Cuff's taxes prior to the formation of the copartnership, or to show that the individual license of Cuff previous to that time would not authorize the firm to deal in merchandise, after its formation. It must be borne in mind that no person or copartnership is authorized to deal as a merchant without having *first* obtained a license according to law. Section 6895, R. S. 1889.

For some inscrutable purpose the collector, register, and comptroller have commingled the license and the payment of the tax thereon into one nondescript instrument and respondent seeks to uphold his title to this office by a claim of payment of a school tax levied on this merchant's license, whereas by the law of the state he was not a merchant and had no right to deal as such until he obtained his license.

The conditions for securing a license are the execution of the bond to be approved by the collector, conditioned for the payment of the tax that may be

due upon such license, and the payment simply of the license fees, which are prescribed by section 6903 to be fifty cents to the clerk and twenty-five cents each, to the collector, for the bond and statement. Secs. 6897, 6901 and 6903.

In the city of St. Louis it is the duty of the register to perform the duties of the county clerk in relation to the issuing of licenses and extending the school taxes thereon. *State ex rel. v. Tracy*, 94 Mo. 217. The city also requires an occupation tax and license fee of its merchants, which are both collected at the same time by the collector.

In this case respondent had no license to deal as a merchant until February 27, 1896, when for the first time the firm received its license.

But no school tax could be lawfully assessed on that license until the first Monday in June thereafter when the firm was required to file a statement of the greatest amount of merchandise on hand at any time between the first Monday in March and first Monday in June; this school tax being an *ad valorem* tax, the statement constituted the assessment upon which it was leviable and the same is true of the other so-called license of March 2, 1896.

Upon neither could there have been a statement filed as required by law and a school tax extended by the register after the licenses were granted prior to the election on March 3, 1896.

It is, therefore, perfectly clear that the collector had no warrant for the collection of a school tax on either of said licenses; that the said firm was not authorized to do business as merchants prior to February 27, 1896; that the amount of merchandise upon which they should have been taxed could not have been known until after said election.

In conclusion the evidence of respondent and his

partner shows that respondent had only been in business about eight months; that his said firm had never procured a license prior to February 27, 1896; that, in order to qualify himself for director, respondent procured one of these receipts on February 27, 1896, and the other on March 2, 1896, prior to the election on March 3, 1896; that their recitals are self-contradictory, and impeached by respondent's own evidence; that they utterly fail to show the payment of lawful school taxes in said city by respondent for two consecutive years next preceding his election; that said receipts were fraudulently contrived to qualify respondent for said office of school director in said board of president and directors of the St. Louis Public Schools; that he was, and is, ineligible to said office of director in said board, by reason of his failure to pay a school tax for two consecutive years immediately preceding his election.

Accordingly it is considered, ordered, and adjudged that a writ of ouster be and is hereby awarded removing said respondent, H. H. Rebenack, from said position and office, as director in the board of president and directors of the St. Louis Public Schools. BRACE, C. J., and SHERWOOD, MACFARLANE, BURGESS, and ROBINSON, JJ., concur. BARCLAY, J., absent.